**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LIHUA XU, et al.,** | : | |
| Plaintiffs, | : | Case No. 2:08-cv-1023 |
| v. | : | Judge Holschuh |
| **UNITED STATES DEPARTMENT OF STATE, et al.,** | : | Magistrate Judge Kemp |
| Defendants. | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Lihua Xu and Yuhao Wang, mother and son, filed suit against the United States Department of State; Secretary of State Hillary Clinton; the United States Consulate General; Brian Goldbeck and Michael Jacobsen of the United States Consulate in Guangzhou, People's Republic of China; and Janet Napolitano, Secretary of the United States Department of Homeland Security. Plaintiffs seek mandamus, declaratory and injunctive relief based on the alleged failure of the United States Consulate in Guangzhou to properly adjudicate Wang's immigrant visa application.

This matter is currently before the Court on Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants maintain that, pursuant to the doctrine of consular nonreviewability, this Court lacks subject matter jurisdiction.  In the alternative, Defendants argue that Plaintiffs' factual allegations fail to state a claim upon which relief can be granted.

**I.  Background**

Plaintiff Lihua Xu is a citizen of the People's Republic of China.  On April 26, 2000, Xu's American employer filed an I-140 immigrant petition on her behalf, with a priority date of May 13,

1997.  The petition was approved on August 18, 2000.  (Am. Compl. ¶ 14).  On May 28, 2002, Xu's status was adjusted to "lawful permanent resident."  (Id. at ¶ 15).  At that time, Xu's son, Yuhao Wang, was twenty years old and was still living in China.  Xu wanted Wang to obtain an immigrant visa as a "derivative beneficiary" so that he could join her in the United States.  Therefore, on March 24, 2003, Xu filed an I-824 Application for Action on an Approved Application or Petition.  (Id. at ¶ 16).

Although the application was approved by United States Citizenship and Immigration Service ("USCIS") on September 1, 2004, it appears that it was never received by the U.S. Consulate in Guangzhou, China.  Xu therefore resubmitted the materials in February of 2007.  (Id. at ¶¶ 17-19).  On November 27, 2007, the U.S. Consulate in Guangzhou denied Wang's immigrant visa application, concluding that he was "not eligible for this following-to-join visa as he has been considered aged out according to the Child Status Protection Act (CSPA)."  (Id. at ¶ 20).

On September 15, 2008, Xu filed another I-824 application on behalf of Wang.  (Id. at ¶ 21).  The USCIS approved the application on February 9, 2009.  The Immigrant Visa Branch of the U.S. Consulate in Guangzhou interviewed Wang on October 29, 2009.  (Id. at ¶¶ 22, 25).  On that same date, the U.S. Consulate denied Wang's immigrant visa application, holding that because his I-824 application had not been filed within one year of the date the visa became available to Xu, Wang was ineligible. (Id. at ¶ 26).

Plaintiffs first filed suit on October 31, 2008, approximately six weeks after Xu filed the second I-824 application.  On November 12, 2009, the Court issued an order requiring Plaintiffs to show cause why the action should not be dismissed since it appeared that no service had been effected on Defendants.  Plaintiffs were subsequently able to locate the certified mail receipts

showing that the Complaint, in fact, had been served on Defendants in a timely manner. Plaintiffs further noted, however, that because the second I-824 application had recently been denied, they were contemplating filing an Amended Complaint.

An Amended Complaint was filed on December 16, 2009, seeking mandamus, declaratory and injunctive relief in connection with the U.S. Consulate's denial of Wang's application. On April 2, 2010, Defendants filed a motion to dismiss, arguing that the U.S. Consulate's decision to deny Wang's application for an immigrant visa was not subject to judicial review. In the alternative, Defendants argued that Plaintiffs had failed to state a claim upon which relief can be granted. Because the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims, it need not reach the alternative argument.

**II.     Relevant Law**

Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, a child of a principal beneficiary of an employment-based immigrant visa petition is entitled to the same status and same order for consideration as the parent if the child is either "accompanying" or "following to join" the parent. See 8 U.S.C. § 1153(d). A "child" is generally defined as an unmarried son or daughter under the age of 21. 8 U.S.C. § 1101(b). In order to obtain an immigrant visa for a child as a "derivative beneficiary," the parent must file an I-824 Application for Action on an Approved Application or Petition. Prior to 2002, if the I-824 application was not fully adjudicated prior to the child's 21st birthday, the child would be deemed to have "aged out" and the visa application would be denied. In 2002, Congress enacted the Child Status Protection Act, or CSPA, to address this problem.

The relevant statute reads as follows:

(h) Rules for determining whether certain aliens are children

(1) In general

For purposes of subsections (a)(2)(A) and (d) of this section [governing unmarried children of permanent resident aliens], a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using--

(A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d) of this section, *the date on which an immigrant visa number became available for the alien's parent*), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by

(B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

8 U.S.C. § 1153(h)(1) (emphasis added).

Defendants maintain that Xu's immigrant visa number "became available" on August 18, 2000, the date on which her I-140 immigrant petition was approved. Wang's I-824 petition was not filed until March 23, 2003, well past the one-year time limit. Defendants therefore argue that it was untimely. Plaintiffs, however, maintain that Xu's immigrant visa number did not "become available" until May 23, 2002, the date on which her status was adjusted to "lawful permanent resident." Plaintiffs therefore argue that Wang's I-824 petition was timely. According to Plaintiffs, Defendants' interpretation of § 1153(h)(1)(A) contradicts the plain meaning of the statute.

**III. Doctrine of Consular Nonreviewability**

Defendants argue that the doctrine of consular nonreviewability deprives this Court of subject matter jurisdiction over Plaintiffs' claims. The Court agrees. Once a defendant challenges the court's subject matter jurisdiction, the plaintiff bears the burden of proving that subject matter

4

jurisdiction exists. See Charvat v. GVN Michigan, Inc., 561 F.3d 623, 627 (6th Cir. 2009). Plaintiffs have failed to satisfy their burden.

In Kleindienst v. Mandel, 408 U.S. 753 (1972), the Supreme Court noted that Congress has delegated the power to make policies and rules for the exclusion of aliens to the Executive Branch. When the Executive Branch denies a visa application "on the basis of a facially legitimate and bona fide reason," the courts will not review that exercise of discretion. Id. at 769-70. As the D.C. Circuit explained in Bruno v. Albright, 197 F.3d 1153 (D.C. Cir. 1999), because of "the political nature of visa determinations," and because there is no statute authorizing judicial review of the actions of consular officers, courts cannot review the issuance or denial of a visa application. Id. at 1159-60. Consular officers are given exclusive authority to make this determination. Id. See also Centeno v. Shultz, 817 F.2d 1212, 1213 (5th Cir. 1987) ("the consular officer's decision to deny Centeno a visa to enter this country was not reviewable by a federal court").

Plaintiffs concede that, in general, the doctrine of consular nonreviewability is a significant barrier. Citing American Academy of Religion v. Chertoff, 463 F.Supp.2d 400 (S.D.N.Y. 2006), they note, however, that "not all consular decisions are insulated from review." (Resp. at 6). Plaintiffs maintain that they are not directly challenging the decision of the consular officer to deny Wang's visa application, but are instead challenging Defendants' interpretation of the CSPA. Plaintiffs acknowledge, however, that one necessarily flows from the other.

Plaintiffs arguments are unavailing. American Academy of Religion is clearly distinguishable. In that case, Professor Tariq Ramadan, a Muslim scholar, was offered a teaching position at the University of Notre Dame. Before he moved to the United States, his H1-B visa was prudentially revoked based on "public safety or national security interests." He then reapplied for

5

a nonimmigrant visa that would permit him to enter the United States to attend various conferences. When the Government failed to act on that application, Ramadan and several American professors sought a preliminary injunction compelling the Government to allow Ramadan to enter the United States to attend the conferences or, in the alternative, to render a final decision on his visa application. Plaintiffs argued that the Government's conduct in excluding Professor Ramadan from the United States on the basis of his political views violated their First Amendment right to engage in face-to-face dialogue and debate with him.

In evaluating the likelihood that plaintiffs would succeed on the merits of their First Amendment claim, the court noted that "the power of a court to override the Government's decision to exclude an alien is severely limited." Id. at 414. Nevertheless, when the Government excludes an alien for a constitutionally impermissible reason, as may be the case when the Government denies a visa application because it disagrees with the alien's political views and wants to prevent the alien from sharing those views with "a willing American audience," the courts may intervene to protect the First Amendment rights of United States' citizens. Id. at 415. The court concluded that the doctrine of consular nonreviewability "does not apply in cases brought by U.S. citizens raising constitutional, rather than statutory claims." Id. at 417.

Of course, in the instant case, Plaintiffs do not argue that Defendants' denial of Wang's visa application violated their First Amendment rights. Rather, they argue that Defendants erred in their interpretation of the CSPA and wrongly concluded that Wang's visa application was not timely filed. The Court therefore fails to see how the exception set forth in American Academy of Religion is relevant to Plaintiffs' claims.

Moreover, Plaintiffs cannot circumvent the doctrine of consular nonreviewability by arguing

that they are challenging Defendants' interpretation of the CSPA rather than the ultimate decision to deny Wang's visa application. As one district court has noted, "courts have repeatedly rejected 'recasting' of complaints by plaintiffs to 'circumvent this well-established doctrine of consular nonreviewability by claiming that they are not seeking a review of a consular officer's decision.'" van Ravenswaay v. Napolitano, 613 F.Supp.2d 1, 4 (D.D.C. 2009) (quoting Chun v. Powell, 223 F.Supp.2d 204, 206-07 (D.D.C. 2002). See also Garcia v. Baker, 765 F.Supp. 426, 428 (N.D. Ill. 1990) (rejecting "Plaintiffs['] attempt to avoid the consular nonreviewability doctrine by maintaining that they are not seeking review of the consular officer's decision" but rather "challenging the State Department's legal opinion, rendered contrary to the law.").

Regardless of whether Plaintiffs seek relief under the Administrative Procedures Act ("APA"), the Declaratory Judgment Act, or the Mandamus Act, the doctrine of consular nonreviewability bars this Court from adjudicating Plaintiffs' claims. Although the APA generally provides for judicial review of agency action, it is inapplicable when there are "other limitations on judicial review." 5 U.S.C. § 702(1). See Bruno, 197 F.3d at 1160 (holding that the APA does not provide for judicial review of consular officer's decision to deny visa application); van Ravenswaay, 613 F.Supp.2d at 6 ("the Administrative Procedure Act provides no basis for challenging consular visa decisions"). Likewise, because Plaintiffs have no right to relief, neither the Declaratory Judgment Act nor the Mandamus Act provides the necessary jurisdictional authority. Id. See also Chen v. Rice, 2008 WL 2944878, at *7 (E.D. Pa. July 28, 2008) (court could not exercise federal question or mandamus jurisdiction in action challenging U.S. Consulate's determination that I-824 applications were untimely filed).

**IV.     Conclusion**

Because Defendants' denial of Plaintiff Wang's application for an immigrant visa is not subject to judicial review, the Court **GRANTS** Defendants' motion to dismiss (Doc. 22) pursuant to Federal Rule of Civil Procedure 12(b)(1).

**IT IS SO ORDERED.**

Date: October 6, 2010                              **/s/ John D. Holschuh**
                                                   John D. Holschuh, Judge
                                                   United States District Court